IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ANTHONY CHAPPLE,
        Plaintiff,

-vs-

TEXAS HEALTH AND HUMAN
SERVICES COMMISSION,
        Defendant.

CAUSE NO.:
AU-17-CV-00410-SS

# ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Texas Health and Human Services Commission's ("HHSC") Motion for Summary Judgment [#51], Plaintiff Anthony Chapple's Response [#52] in opposition, and HHSC's Reply [#57] thereto. Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

## Background

Plaintiff Anthony Chapple has spent nearly all of his professional life working for various state agencies. Second Am. Compl. [#16] ¶ 17; *see* Mot. Summ. J. [#51] Ex. O. From September 1, 2004 to August 13, 2012, Chapple served as the Director of Licensing and Credentialing ("Licensing Director") for the Texas Department of Aging and Disability Services (DADS). Mot. Summ. J. [#51] Ex. O at 3. On August 13, Chapple took a new job as the director of DADS's Quality Monitoring Program. *Id.* A year later, Chapple retired from DADS. *Id.*

In mid-2014, Dana McGrath—who had replaced Chapple upon his move to DADS's Quality Monitoring Program—resigned as Licensing Director. Resp. [#52] Ex. 1 at 5. In September 2014, Mary Henderson, an Associate Commissioner at DADS who was responsible for hiring a new Licensing Director, posted the Licensing Director position online, including the

1

criteria that would be used to "screen" potential applicants. Mot. Summ. J. [#51] Ex. L at 5:12–14, 44:11–20. Before posting the Licensing Director position, Henderson altered the screening criteria by adding a preference for candidates with an advanced degree and removing a provision permitting the substitution of relevant experience for the advanced degree. *See id.* at 64:25–65:9. Prior to altering the screening criteria, Henderson had never met Chapple—who is African-American—nor did she know his race, gender, or what degrees he held. *Id.* at 230:8–16.

Nearly eighty individuals submitted applications for the Licensing Director position, including Chapple. *Id.* Ex. B. Many of these individuals were screened out of consideration because they lacked the relevant degrees. *Id.* Although Chapple lacked a bachelor's degree in a related field and did not hold an advanced degree of any kind, Henderson strongly considered Chapple for the position because of his prior experience as Licensing Director. *See* Mot. Summ. J. [#51] Ex. L at 212:3–15. Ultimately, however, Henderson determined she had two highly qualified applicants and decided not to interview Chapple. *Id.* at 163:4–8. Henderson eventually hired Cynthia Bourland because Bourland had a bachelor's degree in a related field, an advanced degree, and extensive experience with licensing and certification based on her work as the manager for the Professional Licensing and Certification Unit of the Texas Department of State Health Services. *Id.* Ex. P at 5; *see id.* Ex. L at 179:16–180:16.

When Chapple learned he had not been selected as the Licensing Director, he spoke with Jon Weizenbaum, the Commissioner of DADS, and Chris Traylor, the Executive Commissioner of HHSC, and expressed concern he had not been hired because of his race and gender. Second Am. Compl. [#16] ¶¶ 34, 47. On October 10, 2015, Chapple filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging DADS had discriminated against him

2

on the basis of race and gender when it refused to hire him for the Licensing Director position. *Id.* ¶ 48.

From October 8, 2015 to June 26, 2017, Chapple applied to seven different positions within HHSC and DADS. *Id.* ¶ 49. Three of those applications are relevant to the pending motion. On October 27, 2015, Chapple applied to be HHSC's Deputy Inspector General for Policy and External Relations ("Deputy Inspector General"). Mot. Summ. J. [#51] at 8. Stuart Bowen, a former HHSC Inspector General, was responsible for deciding who would be hired for the position. *Id.* Then, on November 10, Chapple applied to be HHSC's Assistant Deputy Inspector General for Policy and External Relations ("Assistant Deputy Inspector General"). *Id.* at 9. Rebecca Komkov, then the Deputy Inspector General for Policy and External Relations, was responsible for deciding who would be hired for the position. *Id.* Finally, on October 31, 2016, Chapple again applied for the Licensing Director position even though the screening criteria had not changed since 2014 and even though Chapple still lacked an advanced degree or a bachelor's degree in a related field. Second Am. Compl. ¶ 49; Mot. Summ. J. [#51] Ex. E, Ex. N. As in 2014, Mary Henderson was responsible for deciding who would be hired as the Licensing Director. *See* Mot. Summ. J. [#51] Ex. L at 215:23–24. Chapple was not hired for any of these positions. Second Am. Compl. ¶ 51.

On May 4, 2017, Chapple filed this suit claiming DADS and HHSC had committed multiple violations of Title VII of the Civil Rights Act of 1964, codified as 42 U.S.C. §§ 2000e-2 and 2000e-3. Compl. [#1] ¶¶ 8, 12. Chapple alleges DADS discriminated against him when it refused to hire him for the Licensing Director position in 2014 and that both agencies retaliated against him for filing the EEOC complaint in 2015 by refusing to hire him for any of the seven

3

positions he applied for between October of 2015 and June of 2017. Second Am. Compl. [#16] ¶¶ 8, 14.[1]

On April 25, 2018, Chapple dropped four of his claims, and on August 2 HHSC filed a motion for summary judgment on Chapple's remaining claims. Mot. Summ. J. [#51] at 5–6; *see id.* Ex. A. HHSC's motion has been briefed and is ripe for decision.

## Analysis

### I. Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent

---

[1] Although Chapple initially included both DADS and HHSC as defendants, on September 1, 2017 DADS was abolished and merged into HHSC. Mot. Substitute [#30] at 1. Consequently, on January 9, 2018 this Court granted HHSC's unopposed motion to substitute HHSC for DADS and changed the styling of the case to reflect that HHSC is the sole defendant. Order of Jan. 9, 2018 [#31].

4

summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Chapple's Title VII Claims.

Chapple alleges HHSC (1) discriminated against him by failing to hire him for the 2014 Licensing Director position in violation of 42 U.S.C. § 2000e-2; and (2) retaliated against him for filing an EEOC complaint against DADS by refusing to hire him for Director Inspector General position, the Assistant Director Inspector General position, or the 2016 Licensing Director position in violation of 42 U.S.C. § 2000e-3. Second Am. Compl. [#16] ¶¶ 8, 14.

5

Because Chapple's claims of discrimination and retaliation rely on circumstantial evidence, the Court evaluates them using the burden-shifting framework first described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (outlining elements of prima facie case of discrimination); *see also Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016) (outlining elements of prima facie case of retaliation). Under the *McDonnell Douglas* framework, the employee must first establish a prima facie case of discrimination or retaliation by producing evidence in support of each element of the claim. *McDonnell Douglas*, 411 U.S. at 802; *see Bryan*, 375 F.3d at 360 (noting burden is one of production, not persuasion). If the employee establishes a prima facie case, the burden shifts to the employer to produce evidence articulating a legitimate reason for the employer's action. *McDonnell Douglas*, 411 U.S. at 802; *see Reeves*, 530 U.S. at 142 (describing the employer's burden as one of production). Once the employer articulates a legitimate reason for the action, the burden then shifts back to the employee to "demonstrate the employer's proffered explanation is unworthy of credence." *Bryan*, 375 F.3d at 360. The plaintiff can meet this burden by either providing evidence of intentional discrimination or retaliation or by providing evidence establishing the falsity of the employer's explanation. *Id.*

### A. Chapple's Discrimination Claim Under 42 U.S.C. § 2000e-2.

Chapple alleges HHSC violated 42 U.S.C. § 2000e-2 because it discriminated against him on the basis of race and gender when it refused to hire him as the Licensing Director in 2014. Second Am. Compl. ¶ 8. For Chapple to establish a prima facie case of discrimination, he must provide evidence showing: (1) he is a member of a protected class; (2) he was qualified for the position he applied for; (3) he was not hired despite his qualifications; and (4) the position was ultimately filled by an individual who is not a member of the protected class. *McDonnell*

*Douglas*, 411 U.S. at 802. Chapple's burden of establishing a prima facie case is "not onerous" because it requires only that Chapple produce evidence giving rise to an inference of discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

HHSC argues Chapple cannot establish a prima facie case because he cannot show he was qualified. Mot. Summ. J. [#51] at 14. When Chapple applied, the Licensing Director expressly required an advanced degree, which Chapple does not have. *Id.* In response, Chapple contends he was qualified for the position because he served as the Licensing Director for eight years and the position was essentially unchanged. Resp. [#52] at 5.

The Court concludes Chapple has produced sufficient evidence to show he was qualified for the Licensing Director position. Contrary to HHSC's assertions, the Licensing Director's description states an advanced degree is "preferred," not required. Mot. Summ. J. [#51] Ex. B at 4, Ex. L at 74:23–75:10. Furthermore, Henderson's deposition testimony demonstrates she strongly considered Chapple for the position because of his prior experience as Licensing Director even though he did not meet the screening criteria. *Id.* Ex. L at 212:3–15. Thus, Chapple has provided evidence demonstrating he was qualified for the Licensing Director position sufficient to establish a prima facie case for discrimination.

Because Chapple has established a prima facie case of discrimination, the burden shifts to HHSC to articulate a legitimate reason for declining to hire Chapple for the Licensing Director position. *See Burdine*, 450 U.S. at 255. HHSC has met this burden by producing evidence demonstrating Chapple was not hired for the Licensing Director position in 2014 because he did not have an advanced degree, he did not have a bachelor's degree in a related field, and his application demonstrated a lack of attention to detail. Resp. [#52] Ex. 6 at 150:3–18; *see* Mot. Summ. J. [#51] Ex. B, Ex. O. Because HHSC has produced evidence demonstrating a

7

nondiscriminatory reason for rejecting Chapple, the burden shifts back to Chapple to produce evidence creating a genuine issue of material fact as to whether HHSC's explanation is pretextual and unworthy of credence. *Bryan*, 375 F.3d at 360.

Chapple has not produced sufficient evidence to show HHSC's proffered reasons for refusing to hire him were mere pretexts for discrimination. Chapple has produced no evidence contesting the fact that Bourland had an advanced degree, that Bourland had a bachelor's degree in a related field, or that Bourland's application demonstrated an attention to detail better than Chapple's application. As these were the reasons Henderson gave for not hiring Chapple, *see* Resp. [#52] Ex. 6 at 150:6–18, Chapple has introduced no evidence demonstrating HHSC's proffered reasons are unworthy of credence.

Furthermore, the Fifth Circuit has held that a plaintiff must produce evidence showing he was clearly better qualified than the candidate selected to create a genuine issue about whether the employer's proffered reasons were pretextual. *See Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 959 (5th Cir. 1993) (*citing Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992)). The only evidence provided by Chapple showing he was better qualified than Bourland was that Chapple had served as the Licensing Director for eight years and Bourland did not have similar experience. *See* Sec. Am. Compl. [#16] ¶¶ 36, 41–42; Resp. [#55] Ex. 3 at 71:24–72:1, 78:4–17. Such evidence fails to demonstrate Chapple was clearly better qualified than Bourland for two reasons. First, it entirely overlooks the fact that Bourland, unlike Chapple, had an advanced degree and a bachelor's degree in a related field. *See id.* Ex. 16. Second, it fails to account for Bourland's experience as the Manager of Professional Licensing and Certification for the Texas Department of State Health Services, a position which Bourland held for seven years and which involved similar duties to the Licensing Director at DADS. *Compare* Mot.

Summ. J. [#51] App. Ex. P, at 5, *with id.* Ex. O, at 3. Chapple's evidence thus amounts to an "attempt to equate years served with superior qualifications." *Bodenheimer*, 5 F.3d at 959. Like the Fifth Circuit, *see id.*, this Court finds such reasoning unpersuasive. It thus concludes Chapple has failed to create a genuine issue that the reasons offered by HHSC for refusing to hire him for the Licensing Director position were pretexts for discriminating against him.

Chapple attempts to sidestep this failure by arguing that Henderson's decisions to add the advanced-degree preference and to remove the experience equivalent were intended to discriminate against him by imposing unnecessary requirements that he could not meet. Resp. [#52] at 5–6. But Henderson made these decisions before she knew Chapple was applying for the Licensing Director position, *see* Mot. Summ. J. [#51] at 6–7, and Chapple offers no evidence indicating Henderson knew Chapple's race, gender, or educational attainment before allegedly tailoring the screening criteria to discriminate against him. Furthermore, only ultimate employment decisions—such as hiring, firing, granting leave, promoting, and compensating—give rise to a Title VII discrimination claim. *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007) (per curiam); *see Williams v. City of Austin*, 170 F. Supp. 3d 939, 948 (W.D. Tex. 2016). Thus, even if Chapple had produced evidence showing Henderson discriminated against him by altering the screening criteria, summary judgment would still be proper because such a claim is not actionable as a matter of law.

The Court concludes Chapple has failed to produce sufficient evidence for a jury to reasonably find HHSC violated § 2000e-2 when it refused to hire Chapple for the Licensing Director position in 2014. Accordingly, the Court Grants HHSC's motion for summary judgment on Chapple's discrimination claim.

## B. Chapple's Retaliation Claims Under 42 U.S.C. § 2000e-3.

Chapple further alleges HHSC violated 42 U.S.C. § 2000e-3 when it refused to hire him for the Deputy Inspector General position in 2015, the Assistant Deputy Inspector General position in 2015, or the Licensing Director position in 2016 in retaliation for the EEOC complaint Chapple filed against DADS in 2015. Second Am. Compl. [#16] ¶¶ 14, 57–59. For Chapple to establish a prima facie case of retaliation, he must show (1) he engaged in an activity protected by Title VII, (2) he suffered an adverse employment action, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983). In order to establish a causal connection, Chapple must produce evidence showing that but for his 2015 EEOC complaint, HHSC would have hired him for each of the positions to which he applied. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (holding that Title VII retaliation claims "must be proved according to traditional principles of but-for causation").

HHSC argues Chapple cannot establish a prima facie case of retaliation for his claims regarding both the Deputy Inspector General position and the Assistant Deputy Inspector General position because Chapple has not demonstrated the decision makers for those positions were aware of his EEOC complaint. Mot. Summ. J. [#51] at 16. It further argues Chapple fails to establish a prima facie case of retaliation for his claim regarding the Licensing Director position in 2016 because he has not produced evidence demonstrating his EEOC complaint was a cause of HHSC's refusal to hire him. *Id.* at 17–18. Because HHSC's challenge is the same for Chapple's retaliation claim regarding the Deputy Inspector General position and his retaliation claim regarding the Assistant Deputy Inspector General position, the Court evaluates these two

10

claims together before evaluating Chapple's retaliation claim regarding the Licensing Director position in 2016.

### 1. The Deputy Inspector General and Assistant Deputy Inspector General Applications.

To establish the causation prong of a retaliation claim, the employee must show the decision maker—that is, the person who actually made the employment decision—was aware the employee engaged in a protected activity. *Equal Emp't Opportunity Comm'n v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017). Although a decision maker's awareness of the activity may be established by circumstantial evidence, the employee must produce evidence of the decision maker's awareness beyond "generalized discussions between a decision maker and someone with knowledge of the plaintiff's protected activity." *Id.*; *see Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 258 (5th Cir. 2009).

Chapple has failed to produce sufficient evidence demonstrating Stuart Bowen—the decision maker for the Deputy Inspector General position—knew of Chapple's EEOC complaint when he refused to hire Chapple. Chapple offers only two pieces of evidence to show Bowen was aware of his EEOC complaint. The first piece of evidence is Chapple's suggestion to Bowen to contact Weizenbaum and Traylor as references. Resp. [#52] Ex. 3 at 82:3–14. This evidence is insufficient because Chapple produces nothing beyond speculation that Bowen ever called Weizenbaum or Traylor, much less that Chapple's EEOC complaint was discussed. *See id.* at 82:9–12 (conceding there is no evidence Bowen ever called Weizenbaum or Traylor other than Chapple's suggestion that he do so). Chapple's second piece of evidence is his assertion that EEOC complaints were discussed at DADS Executive Team meetings. *Id.* at 130:15–23; *see id.* Ex. 2 ¶ 2. This evidence is insufficient for two reasons. First, Chapple's declaration states that Executive Team meetings would sometimes discuss employees who, unlike Chapple, made

complaints about discrimination to a *state legislator*. *Id.* Ex. 2 ¶ 2. Second, this evidence is meant to prove that because Bowen was aware of EEOC complaints generally he must have been aware of Chapple's EEOC complaint specifically. Such speculation, however, is insufficient to make out a case for retaliation where the employer has stated he was not aware of the employee's complaint. *See Lee*, 574 F.3d at 258; *see also* Mot. Summ. J. [#51] Ex. K ¶ 4 (stating Bowen was unaware of Chapple's EEOC complaint when hiring for the Deputy Inspector General position). As Chapple has failed to produce evidence of causation sufficient to establish an element of his prima facie case, the Court grants HHSC's motion for summary judgment on Chapple's retaliation claim regarding the Deputy Inspector General position.

Similarly, Chapple has failed to produce sufficient evidence demonstrating the decision makers for the Assistant Deputy Inspector General position knew of his EEOC complaint when they decided to not hire him. As Chapple concedes in his response, Komkov was unaware of Chapple's EEOC complaint. Resp. [#52] at 13. Nevertheless, Chapple contends Komkov's lack of awareness is irrelevant because the decision to stop hiring for the Assistant Deputy Inspector General position was made by Bowen. *Id.* But as the Court concluded above, Chapple has not produced substantial evidence showing Bowen knew of his EEOC complaint. Because Chapple has not introduced substantial evidence the decision maker for the Assistant Deputy Inspector General position was aware of his EEOC complaint, he has failed to establish a prima facie case of retaliation, and the Court grants HHSC's motion for summary judgment on Chapple's retaliation claim regarding the Assistant Deputy Inspector General position.

### 2. The 2016 Licensing Director Application.

Chapple finally alleges Henderson retaliated against him for the 2015 EEOC complaint by not hiring him as the Licensing Director in 2016. Second Am. Compl. [#16] ¶ 58. Although

Henderson was aware of Chapple's 2015 EEOC complaint at the time she made the hiring, *see* Mot. Summ. J. [#51] Ex. L at 213:14–17, Chapple has not established a prima facie case of retaliation because he has not produced evidence demonstrating Henderson would have hired him as the Licensing Director in 2016 but for the EEOC complaint. *See Nassar*, 570 U.S. at 360.

Chapple offers two pieces of evidence to support his prima facie case of retaliation by Henderson. First, Chapple offers the fact that Henderson was the subject of the EEOC complaint. Resp. [#52] at 19. Second, Chapple offers the fact that he was ranked lower as a candidate for the Licensing Director position in 2016 than he was for the Licensing Director position in 2014. *Id.* But Chapple offers no evidence to refute the fact that the screening requirements for the Licensing Director Position had not changed since the opening was posted in 2014, that Chapple still did not meet the screening requirements, and that Henderson had previously refused to hire him as Licensing Director precisely because he did not meet the screening requirements. *See* Mot. Summ. J. [#51] Ex. L at 211:24–212:9. Furthermore, the undisputed evidence demonstrates there were seventy more applicants for the Licensing Director position in 2016 than there were in 2014, each of the three candidates interviewed had an advanced degree, and the hired candidate had a Ph.D. *Compare id.* Ex. E (149 applications in 2016), *with id.* Ex. B (seventy-eight applicants in 2014); *see id.* Ex. L at 211:68, 217:20–25 (each candidate interviewed in 2016 had an advanced degree), 214:15–17 (candidate hired to be Licensing Director in 2016 had a Ph.D.). Chapple has therefore failed to produce sufficient evidence showing that but for his 2015 EEOC complaint he would have been hired for the Licensing Director position in 2016. Because Chapple has not established a prima facie case of retaliation, the Court grants HHSC's motion for summary judgment on Chapple's retaliation claim related to the 2016 Licensing Director position.

## Conclusion

The Court grants HHSC's motion for summary judgment on Chapple's discrimination claim because he fails to demonstrate a genuine issue of material fact on whether the reasons HHSC gave for refusing to hire him for the Licensing Director position in 2014 were pretexts for discrimination. Further, the Court grants HHSC's motion for summary judgment on each of Chapple's retaliation claims because he does not produce evidence demonstrating causation sufficient to establish a prima facie case of retaliation.

Accordingly,

IT IS ORDERED that HHSC's Motion for Summary Judgment [#51] is GRANTED.

SIGNED this the 27th day of November 2018.

_____
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE